**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan M. Snyder, a married woman, as her sole and separate property, | No. CV-12-0016-PHX-LOA |
| Plaintiff, | **ORDER** |
| vs. | |
| HSBC Bank, USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1 for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates, a foreign corporation; and Ocwen Loan Servicing, LLC, a foreign limited liability company, | |
| Defendants. | |

This action comes before the Court on Defendants' second Rule 12(b)(6), Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Motion to Dismiss Plaintiff's First Amended Complaint.[1] (Doc. 51)   Defendants contend Plaintiff's Amended Verified Complaint ("AVC"), doc. 53, fails to state a claim upon which relief may be granted. (Doc. 51) On July 19, 2012, the Court granted Plaintiff's Motion for Leave to Amend Plaintiff's Complaint,

---

[1] The Court summarily rejects Plaintiff's argument that Defendants' dismissal motion "is void as it was filed prematurely" before the amended complaint was filed. (Doc. 65 at 1-2)  Plaintiff cites no authority for her argument. The record reflects the amended complaint is substantively the same as the one pre-approved by the Court prior to the filing of the dismissal motion, the amended complaint was filed a mere 53 minutes before the dismissal motion was filed, and service of the amended complaint on Defendants was made electronically per Rule 5(b)(2)(E), Fed.R.Civ.P., which obviated the need to serve it by a process server on Defendants' statutory agents as Plaintiff did.

which attached a copy of the proposed amended complaint as required by the Rules of Practice for the District Court of Arizona ("Local Rules" or "LRCiv") (Docs. 41 and 41-1 at 1-25)  Because oral argument would not aid the Court's decisional process, Defendants' request for oral argument will be denied. *See, e.g.*, *Mahon v. Credit Bur. of Placer Cnty., Inc.*, 171 F.3d 1197,1200 (9th Cir. 1999). After considering Plaintiff's Response, doc. 65, and Defendants' Reply, doc. 66, the Court will grant the motion and terminate this case.

**I. Jurisdiction**

Subject matter jurisdiction for this action is based upon 28 U.S.C. § 1332(a)(1) because the parties' citizenship is completely diverse and the amount in controversy ex-ceeds the sum of $75,000.00, exclusive of interest and costs. (Doc. 1, ¶¶ 7, 14, Notice of Removal) Although Plaintiff has not pled federal question jurisdiction, by alleging a violation of the Fair Credit Reporting Act, this District Court also has subject matter jurisdiction under 28 U.S.C. § 1331. Federal district courts "have original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. Federal question jurisdiction exists when a complaint facially presents a federal question. *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993).

The parties have consented to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 7, 12, 26)

**II. Background**

**A. The Parties**

Plaintiff Susan M. Snyder ("Plaintiff"), a single person in 2005, executed a deed of trust to secure payment on a June 2005 loan and promissory note on her former residence located on West Fishhook Court, Surprise, Arizona. (*Id.*, ¶ 5 at 3)  The AVC alleges Defendant Ocwen Loan Servicing, LLC ("Ocwen") was, at all material times in this action, the servicing agent for Defendant HSBC Bank, USA, N.A. ("Bank"), a federally chartered national banking association, on Plaintiff's promissory note and loan modifi-cation agreement. (*Id.*, ¶ 12 at 4; doc. 1, ¶ 9 at 3)

**B. Procedural History**

1    Generally, this lawsuit centers around whether the parties contractually agreed to a

2    binding and enforceable loan modification agreement ("LMA") in August 2010 regarding

3    Plaintiff's residence, and, if they did, whether Plaintiff subsequently breached the LMA for

4    non-payment of the monthly escrowed property taxes and insurance ($179.57 per month)

5    prior to the trustee sale and foreclosure of Plaintiff's residence, or whether Defendants

6    wrongfully breached the LMA or are otherwise liable for Plaintiff's damages. (Doc. 53)

7    On December 8, 2011, Plaintiff filed this action in the Maricopa County Superior

8    Court, State of Arizona. (Doc. 1 at 15-25)  On that same date without notice to the Bank or

9    Ocwen, Plaintiff obtained a temporary restraining order ("TRO") from a Superior Court

10   judge pending an evidentiary hearing, pursuant to Arizona Rule of Civil Procedure

11   ("Ariz.R.Civ.P.") 65(d), enjoining Defendants from foreclosing on or selling Plaintiff's

12   residence or removing her from her residence until notice and a full hearing was held. (Doc.

13   1 at 13-14)  By its terms, the TRO expired at the conclusion of the order to show cause

14   hearing scheduled for January 5, 2012. (*Id.* at 10-11)  The Bank and Ocwen, how-ever,

15   removed this action on January 3, 2012, three days before the show cause hearing. (*Id*. at 1)

16   On June 5, 2012, over five months after removal, Plaintiff filed a Notice of Pending

17   Motion required by LRCiv 3.7(c), requesting a hearing on her Application for Temporary

18   Restraining Order and Order to Show Cause why Preliminary Injunction Should not Issue.[2]

19   (Doc. 30)  According to Plaintiff's Notice, the parties disputed whether the December 8,

20   2011 TRO remained a valid order nearly six months after removal when Defendants notified

21   Plaintiff they intended to sell her residence at a trustee sale on June 20, 2012. (*Id*. at 2)  As

22   requested by Plaintiff, the Court promptly set a conference for the purpose of discussing the

23   status of the TRO and Plaintiff's erroneous belief that the State-court TRO remained a valid

24   order, prohibiting Defendants from foreclosing on Plaintiff's property. (Doc. 32)  At the

25   conference in open court on June 14, 2012, and in an order entered on June 18, 2012, the

26

27      _____

28   [2] Local Rule civil 3.7(c) provides "[i]f a motion is pending and undecided in the state
     court at the time of removal, the Court need not consider the motion unless and until a party
     files and serves a notice of pending motion . . . .").

1    Court informed Plaintiff that the State-court TRO expired by operation of law and was no

2    longer valid, citing, *inter alia*, *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439-40

3    (1974) and *Pantoja v. Countrywde Home Loans, Inc*., 640 F.Supp.2d 1177, 1183 n. 5 (N.D.

4    Cal. 2009) ("[U]nless a [state] TRO is extended, it expires no later than 10 days after the date

5    of removal. Fed.R.Civ.P. 65(b)(2); *Granny Goose Foods, Inc*., 415 U.S. at 440 n. 15 . . . ."").

6    (Doc. 40 at 4)  The Court sustained Defendants' objection to Plaintiff's claim that the State

7    TRO remained a valid and enforceable order because it expired months previously and was

8    not extended by Plaintiff upon a showing of good cause. (*Id*.)   The Court concluded

9    "Plaintiff's TRO expired no later than January 5, 2012. *See Granny Goose Foods*, 415 U.S.

10   at 440 n. 15 ('[W]here the state court issues a temporary restraining order of 15 days'

11   duration on Day 1 and the case is removed to federal court on Day 13, the order will expire

12   on Day 15 in federal court just as it would have expired on Day 15 in state court. . . .')." (*Id*.

13   at 1-2, 6)

14          Taking judicial notice of publicly-filed documents not subject to reasonable dispute,

15   *e.g.*, the Trustee's Deed Upon Sale regarding the subject residence and the State's and

16   District Court's files, there was no "[c]ourt order granting [Plaintiff] relief pursuant to rule

17   65, Arizona rules of civil procedure, entered . . . before the [June 20, 2012 trustee] sale." *See*

18   Arizona Revised Statute ("A.R.S.") § 33-811(C). It is undisputed that when Plaintiff failed

19   to cure her default on the LMA, Plaintiff's residence was sold on June 20, 2012 at a trustee

20   sale to a non-party, Skyline Vista Equities, LLC., for $126,500.00. (Doc. 52-2 at 1-3)  The

21   Trustee's Deed Upon Sale was signed on July 2, 2012 by Les Zieve, trustee, and recorded

22   on July 12, 2012 with the Maricopa County Recorder. (*Id*. at 1)  Under Arizona law, the

23   Trustee's Deed Upon Sale establishes: (1) Plaintiff was the trustor who signed a deed of trust

24   on June 7, 2005, which was recorded on June 10, 2005, with the Maricopa County Recorder;

25   (2) the lender was Ownit Mort-gage Solutions, Inc., a California corporation; and (3) the

26   beneficiary was Mortgage Electronic Registration Systems, Inc. ("MERS").[3] (*Id*.)

27   ───────────────────

28        [3] Because the Bank has not yet answered the AVC, the record is not clear of its
     relationship to this property or Ownit Mortgage Solutions, Inc., if any.

### C. The Plaintiff's Contentions

Sometime in or before 2009, Plaintiff stopped making the monthly payment on the residence's promissory note which was secured by a deed of trust. The AVC alleges that "due to financial issues[,]" Plaintiff negotiated two loan modifications with Ocwen, the servicer on the note. (Doc. 53, ¶ 6 at 3)  She contends Defendants approved Plaintiff for a LMA in November 2009; however, after she executed and returned the first LMA in November 2009, she was informed she failed to timely return it to Ocwen and "Defen-dants refused to honor that agreement." (*Id*., ¶¶ 7-10)  Though Plaintiff denies she did not timely return this LMA to Ocwen, Plaintiff alleges she "[w]as forced to negotiate the August 2010 loan modification agreement[,]" which she received in September 2010. (*Id*., ¶¶ 9, 11, 13)  On or about September 9, 2010, a Ocwen representative called and left Plaintiff a voice message, confirming the August 2010 LMA had been approved and "the written contract was being mailed to her." (*Id*., ¶ 14)  Plaintiff claims the August 2010 LMA, however, was also not received by Plaintiff until several days after Ocwen's deadline for accepting and remitting payment to Ocwen. (*Id*., ¶ 16)  On or about September 14, 2010, Plaintiff's attorney contacted and advised Ocwen that he had just received the second loan modification paperwork and Plaintiff would be "[e]xecuting the document and returning it with the Initial payment of $922.41[4] and the monthly trial payment of $742.84." (*Id*., ¶ 15)  Plaintiff alleges she signed the August 2010 LMA and mailed it back to Ocwen along with "the payments required by the written contract." (*Id*., ¶ 18)  She alleges, however, Ocwen never signed and returned an executed copy of the August 2010 LMA to Plaintiff despite her claim she made numerous payments in accordance with the terms of the parties' written agreement. (*Id*., ¶ 22)  A copy of the August 2010 LMA is attached to the AVC. (Doc. 53-1, Exhibit ("Exh.") 1 at 4-15)

Plaintiff alleges she made ten payments in the amounts specified in the August 2010 LMA, when Ocwen returned the tenth payment to her, advising this payment "[w]as not the

---

[4] It is undisputed that pursuant to the August 2010 LMA, the initial payment was $992.41, not $922.41 as alleged by Plaintiff. (Docs. 53, ¶ 20;  53-1, Exh. 1 at 4)

full balance due under the Note/Deed of trust/Notice of default." (Doc. 53, ¶ 23) Specifically, Plaintiff alleges that on or about July 25, 2011, she mailed her August 2011 LMA payment, check no. 1092, in the amount of $742.84 to Ocwen. (*Id.*, ¶ 27)  After the parties exchanged several communications and the $742.84 check, Plaintiff received a letter, dated September 2, 2011, from Ocwen, confirming Plaintiff's "loan was approved for a modification on August 26, 2010 and the modification on the loan was completed on December 6, 2010." The letter advised Plaintiff that (1) Ocwen had researched her claim concerning her monthly payment and concluded $742.84 was an incorrect amount; (2) the amount she paid ($742.84 per month) was an insufficient amount to cure the past-due balance on her loan; and, (3) Plaintiff was required to pay $922.41 ($742.84 + $179.57) per month. (*Id.*, ¶¶ 28-30, 33-35;  doc. 53-2 at 1-2, Exh. 2 attached to the AVC)  Plaintiff alleges that before she received Ocwen's September 2, 2011 letter, she was never been informed that her loan modification payment was supposed to be $922.41 per month; and the only notice she received concerning a monthly payment of $922.41 was the initial $922.41 payment in the LMA and then she was pay $742.84 on October 1, 2010 and every month thereafter, inferring she did not know she was required to pay the monthly amount of $179.57 for taxes and insurance. (*Id.*, ¶¶  35-36)

When Defendants initiated non-judicial foreclosure proceedings and provided Plaintiff notice a trustee sale was scheduled for December 9, 2011, Plaintiff filed this action in the Superior Court on December 8, 2011 and obtained the TRO. (Doc. 1 at 29)  It is undisputed Plaintiff received notice of the December 9, 2011 trustee sale.

Plaintiff'S AVC pleads seven causes of action: (1) Declaratory Relief, Count One; (2) Slander of Title and Trespass to Real Property, Count Two; (3) Breach of Implied Covenant of Good Faith and Fair Dealing, Count Three; (4) Material Misrepresentation, Count Four; (5) Negligence or Gross Negligence, Count Five; (6) Violation of the Fair Credit Report Act and Slander of Credit, Count Six; and (7) Breach of Contract. (Doc. 53) The AVC's wherefore clause requests, *inter alia*, damages in an amount to be proven at trial; punitive damages in an amount not less than $1,500,000.00; an order transferring title to Plaintiff's

1  former residence back to Plaintiff; pre-judgment and post-judgment interest; and an award

2  of attorneys' fees and costs. (*Id.* at 19-20)

3  **D. Defendants' Arguments for Dismissal**

4  Based on the AVC's allegations and its attached exhibits, Defendants concede the

5  following facts for purposes of their dismissal motion. Plaintiff received a document from

6  Ocwen entitled Loan Modification Agreement[5] in late 2010. (Doc. 66 at 2) (citing AVC, doc.

7  53 at ¶ 22[6])  The August 2010 LMA required Plaintiff to make an initial payment of $992.41

8  on or before September 10, 2010 "[a]nd one trial period payment of **principal and interest**

9  in the amount of $742.84 on or before October 1, 2010." (*Id.*) (citing Exh.1, ¶ 2; doc. 53-1

10 at 4) (emphasis in original)  The August 2010 LMA required Plaintiff to also make monthly

11 escrow payments, in addition to the principal and interest payments, if the loan was

12 "escrowed" for property taxes and insurance at the time of the LMA. (*Id.*) (citing Exh.1, ¶

13 12; doc. 53-1 at 8)  Plaintiff's obligation to pay Ocwen funds for "Escrow Items," defined

14 in the August 2010 LMA to include the residence's property taxes and insurance, "[c]ould

15 only be waived in writing." (*Id.*)  Plaintiff made the initial payment of $922.41 and first trial

16 period payment of $742.84. (*Id.*) (citing Exh. 1's check no. 1069, dated 9-8-10, in the amount

17 of $922.41, and the AVC, ¶¶ 24-25[7])  Plaintiff does not allege Defendants waived the

18 monthly escrow payments.

19 Citing the AVC's allegations, Defendants note that when Ocwen received Plaintiff's

20 August 2011 payment in the amount of $742.84, the check was returned with a letter,

21 advising Plaintiff the check "was insufficient to pay the past due balance on her loan." (*Id.*

22 at 2-3) (citing doc. 53, ¶ 28)  Plaintiff then sent a letter back to Ocwen, en-closing check no.

23 1092 in the amount of $742.84, and advising Ocwen "she had been sending that amount in

24 under the terms of the [LMA] she had previously executed in September 2010 and would

25

26 [5] Defendants' Reply calls it a "loan modification offer." (Doc. 66 at 2)

27 [6] The actual paragraphs in the AVC are 13 and 18.

28 [7] The actual paragraphs in the AVC are 15 and 18.

1    continue to send such amount." (*Id.* at 3) (citing doc. 53, ¶ 29)    Defendants point out

2    that the AVC alleges that, on September 2, 2011, Plaintiff received Ocwen's responsive

3    letter, advising Plaintiff her monthly payment of $742.84 "[w]as in error and she was

4    required to pay $922.41 per month." (*Id.* at 3) (citing doc. 53, ¶ 3[3] and doc. 53-2, Exh. 2

5    to the AVC)  Defendants point out Ocwen's letter indicated, *inter alia*, that (1) the account

6    statements sent to Plaintiff on a regular basis reflected the amount due on Plaintiff's loan, and

7    (2) any payments remitted toward the loan should be in the full reinstatement amount, and

8    (3) partial payments would not be accepted. (*Id.*) (citing Exh. 2)  Defendants note Plaintiff

9    did not alleged that her loan was not escrowed, that she did not owe $179.57 per month for

10    taxes and insurance, that she did not receive notice of the monthly escrow amount until she

11    received Ocwen's  September 2, 2011 letter, or that she tendered the amount needed to cure

12    the escrow arrearage prior to the trustee sale. (*Id.*)

13        Defendants contend Plaintiff  "waived any claims related to the foreclosure by

14    failing to formally raise them and obtain injunctive relief during the [six] months between

15    the issuance of the state court [TRO] and the June 20, 2012 trustee's sale." (Doc. 51 at 6)

16    They argue Plaintiff's foreclosure-related claims should be dismissed as barred by A.R.S. 33-

17    811(C) and the other causes of action should be dismissed as a matter of law. *Id.* at 5-6.

18        **E. Loan Modification Agreement**

19        Significant to Plaintiff's allegations and Defendants' dismissal motion are two

20    undisputed documents attached as exhibits to Plaintiff's amended complaint. First, Plaintiff

21    attached a copy of the partially-executed, 14-page August 2010 LMA to the AVC. (Doc. 53-

22    1, Exh.1 at 4-15)  Titled Loan Modification Agreement, Exhibit 1's written introduction

23    indicates that Ocwen, the servicer, "is offering [Plaintiff] this Loan Modification Agreement

24    . . . , dated 8/26/2010, which modifies the terms of  [Plaintiff's] home loan obligations as

25    described below. . .  Pursuant to our mutual agreement to modify [Plaintiff's] Note and

26

27

28

Mortgage[8] and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1. <u>You understand that the Note and Mortgage will not be modified unless and until (i) you receive from the Servicer a copy of this Agreement signed by the Servicer,</u> (ii) you successfully complete the Trial Period (as defined below), and (iii) the Servicer Receives assurance from the title insurance company insuring the lien of the Mortgage or otherwise confirms to the Servicer's satisfaction that the Mortgage (as modified by this Agreement) continues to enjoy lien priority for the full amount of the Note.

2. In order for the terms of this Agreement to become effective, you promise to make an initial payment of <u>$992.41</u> on or before 9/10/2010 and one (1) Trial Payment of <u>principal and interest </u>in the amount of $742.84 to Servicer on or before 10/1/2010 (Trial Period).

3. If you successfully complete the Trial Period, your loan will be modified pursuant to the terms of this Agreement. <u>However, if you fail to send any payment on or before the respective due date, the Servicer's modification offer will be null and void and this Agreement will not become effective and you understand and acknowledge that the Servicer may commence or resume foreclosure </u>or other activities related to the delinquency of you loan under its original terms. <u>Acceptance and application of late payments during the Trial Period will not constitute payment in accordance with Section 2 above.</u>

\*    \*    \*    \*

7. You will commence payments of principal and interest in the amount of $742.84 beginning on - and continuing on the same day of each succeeding month until <u>principal and interest </u>are paid in full. The final maturity date of your Note will remain the same. You may have to make a balloon payment as provided in Section 8 below. if you continue to continue to pay on your loan until the final maturity date of your Note.

\*    \*    \*    \*

12. <u>If this loan is currently escrowed for either taxes or insurance or both taxes and insurance,</u> then Servicer will continue to collect the applicable escrow amount in addition to your monthly principal and interest payment. <u>You agree to pay Servicer on the day payments are due under the Note and Mortgage as amended by this Agreement,</u> until the loan is paid in full, <u>a sum (the "Funds") to provide for payment of amounts due for (a) taxes </u>and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) . . . (c) <u>premiums for any and all insurance required by Servicer under the Note and Mortgage;</u> (d) . . . These items are called "Escrow Items." You shall promptly furnish to Servicer all notices of amounts to be

---

[8] The LMA collectively defines a mortgage, deed of trust, or security deed on loans Ocwen services as "the Mortgage." (Doc. 53-1, ¶ A at 4)

paid under this Section 12. You shall pay Servicer the Funds for Escrow Items unless Servicer waives any obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. <u>Any such waiver may only be in writing.</u> In the event of such waiver, you shall pay  directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payments and within such time period as Servicer may require. Your obligation to make such payments and to provide receipts shall be for all purposes be deemed a covenant and agreement contained in the Note and Mortgage, as the phrase "covenant and agreement" is used herein. If you are obligated to pay Escrow Items directly, pursuant to a waiver, and you fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Note and Mortgage and this Agreement and pay such amount and you shall then be obligated to repay to Servicer any such amount. . . .

(*Id.* at 4-5) (emphasis added)

The other undisputed document is Ocwen's September 2, 2011 letter to Plaintiff. The body of the letter reads:

Dear Ms. Snyder:

Ocwen would like to take this opportunity to thank you for your recent communication regarding the above reference loan.  We appreciate the time and effort on your part to bring your concern to our attention.  Pursuant to your concern, we have reviewed the loan and below is the recap of our response to the concern raised:

**Concern#1**   You expressed concern regarding the payment being returned on the loan and stated that you have been remitting payment as per the modification agreement. Therefore, you requested us to review the loan and process necessary corrections in this regard.

**Response**   Our records indicate your loan was approved for a modification on August 26, 2010 and the modification on the loan was completed on December 6, 2010. Your loan was modified to an interest rate of 4.42000% and <u>your new monthly mortgage payment was in the amount of $922.41, of which $742.84 will be for principal and interest portion and $179.57 will go into your escrow account</u>.

Any payment received will be applied to the respective loan within twenty-four hours from its receipt.  In order for a monthly payment to be satisfied on the loan, <u>it is required that the entire payment amount (principal and interest portion and also the escrow portion) be remitted to us</u>. If the customer      s payment is short, the funds may be placed in the suspense (partial payment–credit) account or it may be returned to the remitter.

Please be advised that you were required to remit monthly

- 10 -

mortgage payment in the amount of $922.41 after the modification. However, you remitted only $742.84, which resulted in the delinquent status of the loan, as the payment received was lesser than the contractual payment amount. Please note that account statements were sent to your attention on a regular basis reflecting the amount due on the loan.

If the loan is delinquent, we do not accept partial payments and the funds remitted towards the loan should be in the reinstatement amount, unless the loan is approved for an alternative payment option.  In the event you remit a partial or uncertified payment, the same would be returned to the remiter.

Our records  indicate that we received two (2) payments on August 11, 2011 and September 2, 2011 in the amount of $742.84.  However, these payments were returned to the remiter since they were insufficient to cure the default on the loan.  We have submitted a request for our Payment Reconciliation History to be sent to your attention which reflects all credits and disbursements made to the loan by Ocwen and the resulting loan status.  You will receive this under a separate cover.

We are obligated to service your loan according to the terms and conditions of your original Mortgage and Note. As per the Note, the monthly payments on your loan are due on the first (1st) day of every month.  When a payment is not received within thirty (30)  days from the due date, the loan is reported as delinquent to the credit bureau.

Please note that payments were delinquent and that the credit reporting submitted correctly reflected the delinquent status. Ocwen is obligated to report true and accurate information to the credit bureaus and therefore the credit reporting cannot be changed. If you still believe the reporting is incorrect and you have evidence that the payment(s) was received on time, please provide us with this evidence so that we may research this matter further.

When the loan is past due for eighty (80) days, foreclosure proceedings may be initiated, depending upon the state the property is located. A review of our records indicates that on August 22, 2011, foreclosure proceedings were initiated on the loan, since your loan was past due for the June 1, 2010 payment, as of that date.

*    *    *    *

As of the date of this letter, the loan is past due for the June 1, 2011 payment. For any questions or concerns regarding your loan, you may contact our Customer Care Center at (800) 746-2936.

(Doc. 53-2, Exh. 2 at 1-2 attached to the AVC) (emphasis added)

1    Mindful of the foregoing facts and arguments, the Court discusses the relevant issues

2    of law raised by the parties.

3    **II. Legal Standard**

4    An amended complaint will survive a motion to dismiss if it contains "sufficient

5    factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

6    556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

7    *see also* Rule 8(a)(2), Fed.R.Civ.P.  A district court's "inquiry is limited to the allegations

8    in the complaint, which are accepted as true and construed in the light most favorable to the

9    plaintiff." *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citation

10   omitted). A district court need not, however, accept as true an amended complaint's "legal

11   conclusions[,]" *Iqbal*, 556 U.S. at 678, or "allegations contradicting documents that are

12   referenced in [an amended] complaint or that are properly subject to judicial notice."

13   *Behrens*, 546 F.3d at 588.

14   "Threadbare recitals of the elements of a cause of action, supported by mere

15   conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted) "While legal

16   conclusions can provide the framework of [an amended] complaint, they must be supported

17   by factual allegations." *Id*. at 679. Thus, a district court may begin "by identifying pleadings

18   that, because they are no more than conclusions, are not entitled to the assumption of truth."

19   *Id*.  Courts must then determine whether the factual allegations in the amended complaint

20   "plausibly give rise to an entitlement of relief." *Id*.  Though the plausibility inquiry "is not

21   akin to a probability requirement," an amended complaint will not survive a motion to

22   dismiss if its factual allegations "do not permit the court to infer more than the mere

23   possibility of misconduct . . . ." *Id*. at 678-79 (internal quotation marks omitted). That is to

24   say, a plaintiff's amended complaint must "nudge[ her] claims across the line from

25   conceivable to plausible." *Twombly*, 550 U.S. at 570.

26   **III. Overly Long Responsive Brief**

27   Despite numerous orders directing counsel to comply with the District Court's Local

28

Rules,[9] Plaintiff's Response to Defendants' Motion to Dismiss, doc. 65, substantially exceeded the 17-page limitation mandated by LRCiv 7.2(e)(1) without prior court approval. *See* LRCiv 7.2(e)(1) ("Unless otherwise permitted by the Court, a motion including its supporting memorandum, and the response including its supporting memorandum, may not exceed seventeen (17) pages, exclusive of attachments and any required statement of facts."). Plaintiff did not seek the Court's leave prior to filing an overly long responsive brief as required by LRCiv 7.2(e)(1).

"Judicial economy and concise argument are purposes of the page limit."*Aircraft Technical Publishers v. Avantext, Inc*., 2009 WL 3833573, at *1 (N.D. Cal. Nov. 16, 2009) (citation omitted). A district court's enforcement of local rules assures one party does not have a briefing advantage over an adverse party who complies with the page limitation. *AZ Holding, L.L.C. v. Frederick*, 2010 WL 500443, at *2, n. 4 (D. Ariz. Feb. 10, 2010). "The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc*., 286 F.3d 1118, 1129 (9th Cir. 2002). "At some point, enough is enough." *Id.* (citing *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990); *see also Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009) ("[d]istrict court acted well within its discretion in fashioning a sanction for the defendants' failure to comply with [local rule page limitation].")

District courts have imposed various sanctions for improperly filing overly long briefs. *Phillippi v. Stryker Corp*., 2010 WL 2650596, at *3-4 (E.D. Cal. July 1, 2010) ($500.00 sanction imposed on counsel for filing brief exceeding local rule limit); *Swanson v. U.S. Forest Serv*., 87 F.3d 339, 345 (9th Cir. 1996) (upholding district court's discretion to disregard briefs filed in circumvention of page limits); *Expedia, Inc. v. Reservationsystem.com, Inc*., 2007 WL 201069, at *2 (W.D. Wash. Jan. 23, 2007) (striking entire overly long brief *sua sponte*); *King Cnty. v. Rasmussen*, 143 F.Supp.2d 1225 (W.D.

---

[9] *See* orders at docket number 6, 14, 16, 32, 45, 49, and 67.

Wash. 2001) (striking only the portion of the filing that exceeded local rule page limitation), *aff'd*, 299 F.3d 1077 (9th Cir. 2002); *Electronic Frontier Foundation v. C.I.A.*, 2012 WL 1123529, at *1 (N.D. Cal. April 3, 2012) (striking overlength briefs and affording the parties the opportunity to re-file briefs that conform to the local rules page limit) (citing *Fleming v. County of Kane, State of Ill.*, 855 F.2d 496, 497 (7th Cir. 1988) ("Overly long briefs, however, may actually hurt a party's case, making it 'far more likely that meritorious arguments will be lost amid the mass of detail.'"). The court in *Electronic Frontier Foundation* observed that "[i]t is typically the shorter briefs that are the most helpful, perhaps because the discipline of compression forces the parties to explain clearly and succinctly what has happened, the precise legal issue, and just why they believe the law supports them." *Id.* (quoting *In re M.S.V., Inc.*, 892 F.2d 5, 6 (1st Cir. 1989)).

In the exercise of its wide discretion, the Court strikes from consideration pages 18 through 22 of Plaintiff's Response to Defendants' Motion to Dismiss, doc. 65, due to Plaintiff's violation of LRCiv 7.2(e)(1)'s page limit.

## IV. Governing Law

### A. Arizona Substantive Law; Federal Procedural Law

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Gasperini v. Ctr. for Humanities, Inc.* 518 U.S. 415, 427 (1996)). Because jurisdiction in this case is based, in part, on complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs, Arizona substantive law applies to the state-law claims. *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1406 (9th Cir. 1991). The Federal Rules of Civil Procedure, however, govern the procedural aspects of this action after removal. Rule 81(c)(1), Fed.R.Civ.P. ("These rules apply to a civil action after it is removed from a state court."). *See Kaufman v. Jesser*, 2012 WL 2952398, at *3 (D. Ariz. July 19, 2012).

In analyzing a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party." *Wyler Summit*

1    *Partnership v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998); *see also NL*

2    *Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Factual allegations can be

3    disregarded, however, if the allegations are contradicted by the facts established by reference

4    to documents attached as exhibits to the complaint. *Castle v. Eurofresh, Inc.*, 2010 WL

5    797138, at *3 (D. Ariz. March 8, 2010) ("And a court may disregard allegations of the

6    complaint that are contradicted by attached exhibits.") (citing *Steckman v. Hart Brewing,*

7    *Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *Durning v. First Boston Corp.*, 815 F.2d 1265,

8    1267 (9th Cir. 1987). A district court is not "required to accept as true allegations that are

9    merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Spreewell*

10   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and "the tenet that a court must

11   accept as true all of the allegations contained in a complaint is inapplicable to legal

12   conclusions." *Iqbal*, 556 U.S. at 678.

13       The two exhibits attached to Plaintiff's AVC provide relevant and undisputed facts

14   material to Defendants' dismissal motion which the Court may properly consider. Under the

15   doctrine of "incorporation by reference," a district court may consider documents that are

16   referenced extensively in a complaint and are accepted by all parties as authentic. *Van*

17   *Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668,

18   688 (9th Cir. 2001). Pursuant to Rule 10(c), Fed.R.Civ.P., an exhibit to a complaint or other

19   "pleading is a part of the pleading for all purposes." Thus, under the incorporation-by-

20   reference doctrine, a district court may look beyond the pleadings without converting a Rule

21   12(b)(6) motion into one for summary judgment.

22       **B. Judicial Notice**

23       "As a general rule, a district court may not consider any material beyond the plead-

24   ings in ruling on a Rule 12(b)(6) motion[]" without converting the motion into one for

25   summary judgment. *Lee*, 250 F.3d at 688 (citation and internal quotation marks omitted).

26   There are two exceptions to this rule: (1) a court may take judicial notice of material which

27   is either submitted as part of the complaint or necessarily relied upon by the complaint; or

28   (2) a court may take judicial notice of matters of public record. *Id.*, at 688-89; *Coto*

*Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A district court may take judicial notice "at any stage of the proceeding" and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed.R.Evid. 201(c)(2) and (d). Taking judicial notice, however, does not convert a motion to dismiss into one for summary judgment. *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008); *MGIC Idem. Corp. v. Weisan*, 803 F.2d 500, 504 (9th Cir. 1986).

Here, Defendants request the Court take judicial notice of the Trustee's Deed Upon Sale as a publicly-recorded document and provide the Court with a complete copy of it, citing Rule 201, Fed.R.Evid. (Docs 52; 52-2 at 1-3)  Plaintiff has not objected to Defendants' judicial notice request.

A district court may properly take judicial notice of publicly-filed documents. A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b), Fed.R.Evid. If a trustee deed is a publicly-recorded document, it may be judicially noticed as the accuracy of such a record is not subject to reasonable dispute. *See Armacost v. HSBC Bank USA*, 2011 WL 825151, at *1 n. 1 (D. Idaho Feb. 9, 2011) (taking judicial notice of documents filed in a county's public record, including deeds of trust); *Pantoja*, 640 F.Supp.2d at 1189 n. 12; *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F.Supp. 790, 792 (N.D. Cal. 1992). The Court will grant Defendants' request and take judicial notice of the publicly-filed Trustee's Deed Upon Sale in ruling on Defendants' dismissal motion. (Doc. 52-2 at 1-3)

### C. Non-Judicial Foreclosure

In Arizona, "[d]eed of trust sales are held without the prior judicial authorization required in a mortgage foreclosure." *Contreras v. U.S. Bank as Trustee for CSMC Mortg. Backed Pass-through Certificates etc.*, 2009 WL 4827016, at *4 (D. Ariz. Dec. 15, 2009) (citing *In re Krohn*, 203 Ariz. 205, 208, 52 P.3d 774, 777 (Ariz. 2002)). "Arizona's deed of trust statutes were enacted in 1971 to bypass time-consuming and expensive judicial

foreclosure by using the power of sale authority to sell property securing a delinquent loan after complying with statutory procedural requirements." *Id.*  Unlike a mortgage, "[a] deed of trust is a three-party instrument where the trustor (borrower) transfers legal title in real property to the trustee (legal title holder) as security for the performance by the trustor or a third party of obligations to the beneficiary (lender)." *Maxa v. Countrywide Loans, Inc.*, 2010 WL 2836958, at *4 (D. Ariz. July 19, 2010) (citations omitted). In Arizona, though a promissory note and trust deed are generally construed together, A.R.S. § 33-817,[10] "the note and the deed of trust are nonetheless distinct instruments that serve different purposes. The note is a contract that evidences the loan and the obligor's duty to repay." *Hogan v. Washington Mut. Bank, N.A.*, ___ Ariz. ___, ___,  277 P.3d 781, 782-83 (Ariz. 2012), vacating 227 Ariz. 561, 261 P.3d 445 (Az. Ct. App. 2011) (citing A.R.S. § 33-801(4)). "The trust deed transfers an interest in real property, securing the repayment of the money owed under the note." *Id.* (citing A.R.S. §§ 33-801(4), -801(8), -801(9), -805, -807(A)).

Arizona law requires that a homeowner receive 90 days' notice of a trustee sale upon a homeowner's default on a note secured by a trust deed. A.R.S. §§ 33-808(C),-809(C). "The intent of this notice requirement is to afford homeowners ample time to protect their interests." *Coleman v. American Home Mortg. Servicing, Inc.*, 2010 WL 1268141, at *4 (D. Ariz. March 30, 2010). There are, however, significant adverse legal consequences if a homeowner delinquent on loan payments fails to seek judicial intervention and enjoin a trustee sale. A.R.S. § 33-811(C) provides in pertinent part:

> The trustor . . . and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33–809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the

---

[10]   Arizona Revised Statute § 33-817 provides "[t]he transfer of any contract or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts."

scheduled date of sale.

The Arizona courts and this District Court require the complaining party to obtain a preliminary injunction prior to a trustee sale to avoid the preclusive effect on certain claims that may be alleged after a trustee sale. For example, in *U.S. Bank v. Beck*, 2012 WL 2003348, at *2 (Az. Ct. App. June 5, 2012), the homeowners defaulted on their promissory note, the deed of trust on their residence was assigned to U.S. Bank, and the substituted trustee was directed to initiate foreclosure proceedings. In affirming judgment in favor of U.S. Bank on its forcible entry and detainer action against the homeowners, the Arizona court made clear that because the TRO the homeowners obtained in a separate action had lapsed when they failed to post the bond for the TRO and because they failed to obtain a preliminary injunction preventing the trustee sale, "[t]hey therefore waived any objections and defenses they could have asserted against the title that U.S. Bank acquired by trustee's deed[,]" citing A.R.S. § 33-811(C) and *BT Capital, LLC v. TD Serv. Co. of Ariz.*, 229 Ariz. 299, 301, 275 P.3d 598, 600 (Ariz. 2012) ("Under §§ 33-811(C) and (E), BT thus waived 'all defenses and objections to the [2010] sale, and the resulting trustee's deed conveyed the property to PCF 'clear of all . . . claims or interests that have a priority subordinate to the deed of trust."); *see also Jewell v. Countrywide Home Loans, Inc.*, 2012 WL 170942, at *2 (D. Ariz. Jan. 20, 2012) ("A trustor, such as Plaintiff, who received notice of a trustee sale pursuant to A.R.S. § 33–809 waives all defenses and objections to the trustee sale not raised in an action resulting in injunctive relief awarded at least one business day before the trustee sale."); *Spielman v. Katz*, 2010 WL 4038838, at *3 (D. Ariz. Oct. 14, 2010) ("While Plaintiffs filed an action for relief before the trustee's sale, the record shows that they failed to secure any Rule 65 relief to enjoin such sale. By failing to fulfill the requirements of A.R.S. § 33-811(C), Plaintiffs waived their claims for relief against Defendant Transnation."); *Cettolin v. GMAC*, 2010 WL 3834628, at *3 (D. Ariz. Sept. 24, 2010) ("Because Plaintiffs did not receive an order enjoining the sale of the Property, they waived all claims that would have provided defenses or objections to the sale."). Thus, a homeowner delinquent on her residential loan payments who does not enjoin a trustee sale of the property waives all claims

or objections the homeowner has regarding the sale. Section 33–811(C), however, does not prevent Plaintiff from asserting claims for relief independent of voiding the trustee sale. *See Woods v. BAC Home Loans Servicing LP*, 2011 WL 2746310 at \*2 (D. Ariz. July 15, 2011).

**V. Plaintiff's Causes of Action**

### A. Declaratory Relief (Count One)

Count One of the AVC alleges that, "[p]ursuant A.R.S. § 12-1831 *et. seq.*, the Court has the authority to declare the rights, status and other legal relations of the parties as it pertains to the Real Property at issue in this matter." (Doc. 53 at 9)  Plaintiff must base her request for declaratory relief on a cognizable legal theory. *Oraha*, 2012 WL 70834, at \*3. Defendants argue Plaintiff's claim for declaratory relief fails because it is moot. (Doc. 51 at 6-7)

A declaratory judgment action is a remedy for an underlying cause of action; it is not a separate cause of action as Plaintiff alleges. *See Steers v. CitiMortgage, Inc*., 2011 WL 6258219, at \*3 (D. Ariz. Dec. 15, 2011) (citation omitted); *McMann v. City of Tucson*, 202 Ariz. 468, 473, 47 P.3d 672, 678 (Az. Ct. App. 2002) (noting that a declaratory judgment "remedy" is available "to declare the rights, status, and other legal relations") (quoting A.R.S. § 12-1831 and omitting internal quotation marks); *Land Dept. v. O'Toole*, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (Az. Ct. App. 1987) ("The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists."); *Yares v. Bear Stearns Residential Mortg. Corp*., 2011 WL 2531090, at \*3 (D. Ariz. June 24, 2011) (holding that claims for declaratory and injunctive relief must be based on "a cognizable legal theory."). Because Plaintiff's first count is not a cause of action; but rather, a remedy that is dependent upon the success of her other causes of action, the Court will not analyze Count One under Rule 12(b)(6). *See Schrock v. Federal Nat. Mortg. Ass'n*, 2011 WL 3348227, at \*3 (D. Ariz. Aug. 3, 2011).

### B. Slander of Title and Trespass to Real Property (Count Two)

Count Two alleges causes of action for slander of title and trespass to real property, which Defendants contend fail to state plausible claims as a matter of law. (Docs. 51 at 7-8;

1   53 at 10-12)

2          "Under Arizona law, elements of slander of title are the uttering and publication of

3   the slanderous words by the defendant, the falsity of the words, malice and special damages."

4   *Zandonatti v. MERS*, 2011 WL 7553523, at *7 (D. Ariz. Dec. 16, 2011) (citing *City of Tempe*

5   *v. Pilot Properties, Inc.*, 22 Ariz. App. 356, 363, 527 P.2d 515 (Az. Ct. App. 1974) (citing

6   50 Am. Jur. 2d, Libel and Slander § 541, p. 1060 (1970)); *see also In re Mortgage Electronic*

7   *Registration Systems (MERS) Litigation*, 2011 WL 4550189 at *9 (D. Ariz. Oct. 3, 2011).

8   "Of these elements, malice has been said to be the gist of the action." *Id.* (citation omitted).

9   Malice, a required element of a slander-of-title claim, means acting "[f]rom improper motives

10  or without reasonable belief in the efficacy of the claim." *SWC Baseline & Crismon*

11  *Investors, LLC v. Augusta Ranch Ltd. Partnership*, 228 Ariz. 271, 287, 265 P.3d 1070, 1086

12  (Az. Ct. App. 2011) (citation and internal quotation marks omitted).

13         "A 'trespasser' is one who does an unlawful act or a lawful act in an unlawful manner

14  to the injury of the person or property of another." *Yslava v. Hughes Aircraft Co.*, 1998 WL

15  35298580, at *13 (D. Ariz. June 29, 1998) (citing *MacNeil v. Perkins*, 324 P.2d 211, 216

16  (Ariz. 1958)). "With respect to trespass to real property, '[a] physical entry on the land is an

17  essential element of a trespass.'" *Id.* (quoting *Brenteson Wholesale, Inc. v. Arizona Pub.*

18  *Serv. Co.*, 166 Ariz. 519, 523, 803 P.2d 930, 934 (Az. Ct. App.1990) (citation omitted).

19         Arizona law imposes "liability to another for trespass, irrespective of whether he

20  thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters

21  land in the possession of the other, or causes a thing or a third person to do so" *Taft v. Ball,*

22  *Ball & Brosamer, Inc.*, 169 Ariz. 173, 176, 818 P.2d 158, 161 (Az. Ct. App. 1991) (quoting

23  Restatement (Second) of Torts § 158 (1965)); *see also* Restatement (Second) of Torts § 163

24  ("One who intentionally enters land in the possession of another is subject to liability to the

25  possessor for a trespass, although his presence on the land causes no harm to the land, its

26  possessor, or to any thing or person in whose security the possessor has a legally protected

27  interest.").

28         Count Two does not allege Defendants' actions were malicious, an essential element

of a slander-of-title claim, or Defendants knew they had "no right to enforce the Deed of Trust or Note," doc. 53 at 10. *See Grady* v. *Bank of Elmwood*, 2012 WL 1132528, at *5 (D. Ariz. April 4, 2012); *In re MERS Litigation*, 2011 WL 4550189 at *9. Count Two also fails to allege Defendants intentionally and wrongfully entered onto Plaintiff's property, or caused a thing or a third person to do so. Count Two does not state a claim for slander of title and trespass to real property pursuant to the federal pleading standard after *Twombly* and *Iqbal*.

Under Arizona law, Plaintiff's failure to enjoin the trustee sale also bars Plaintiff's causes of action for slander of title and trespass to real property. A.R.S. § 33-807(C); *see also, e.g., Jewell*, 2012 WL 170942, at *2 (D. Ariz. Jan. 20, 2012); *Madison v. Groseth*, 230 Ariz. 8, 279 P.3d 633, 637-38 (Az. Ct. App. 2012) ("In sum, because [plaintiff's] tort claims depend on her objections to the validity of the trustee's sale, and she has waived those objections, her tort claims cannot survive as a matter of law. The trial court therefore properly dismissed [plaintiff's] complaint pursuant to Rule 12(b)(6). . . .").

## C. Contractual Bad Faith (Count Three)

Count Three of the AVC alleges "the actions of the Defendants concerning the loan modification process, the written contracts at issue in this matter, the failure to accept payments of the Plaintiff, the failure to return a signed and executed copy of the September 2010 loan modification agreement and the failure to provide notice concerning the amount of payments in this matter are a violation [sic] of the obligation of good faith and fair dealing." (Doc. 53 at 12-13)

Defendants contend Plaintiff's bad faith claim "[f]ails because Plaintiff fails to allege sufficient facts to show that Ocwen prevented Plaintiff from obtaining the benefits of the 2010 modification." (Doc. 51 at 8-9) Plaintiff responds, claiming "[D]efendants failed to provide notice to the Plaintiff concerning the 2010 loan modification amount required under the written loan modification agreement. It specified that additional sums may be due for the escrow account for taxes and insurance and then the Defendants failed for more than ten months to provide that amount due to the Plaintiff and then declared the Plaintiff in violation of the written loan modification agreement based upon the Defendants' failure to notify her

of the amount due." (Doc. 65 at 16)  Plaintiff argues she did not get her reasonable expected benefits of the bargain and, as such, Defendants violated the implied covenant of good faith and fair dealing.[11] (*Id*.)

In Arizona, the covenant of good faith and fair dealing is implied in every contract, and the "duty arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 569 (1986) (citations omitted). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id*. "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12, 29 (Ariz. 2002) (citing *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 838 P.2d 1265, 1270 (Ariz. 1992) and *Rawlings*, 726 P.2d at 573-76). "[A]rizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in way not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 (Az. Ct. App. 2002) (citing *Wells Fargo Bank*, 201 Ariz. at 492, 38 P.3d at 30); *see also Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 488-89, 167 P.3d 1277, 1283-84 (Az. Ct. App. 2007).

In *Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (Az. Ct. App. 1992), the Arizona court clarified that "the duty to act in good faith does not alter the specific obligations of the parties under the contract . . . Acts in accord with the

---

[11] Plaintiff also claims Defendants breached the implied covenant of good faith and fair dealing arising out of the November 2009 LMA when Defendants provided Plaintiff with the 2009 LMA after the due date for returning it back to the Defendants. Because this specific ground was not factually alleged in the AVC as part of Count Three's bad faith claim, it is not considered by the Court.

1  terms of one's contract cannot without more be equated with bad faith." *See also Mountain*

2  *Funding, L.L.C. v. Evergreen Communities, LLC*, 2009 WL 4547921 (Az. Ct. App. Dec. 3,

3  2009)

4      Clearly, Count Three's broad, factually-deficient allegations that "the actions of the

5  Defendants concerning the loan modification process [and] the written contracts at issue in

6  this matter" do not state plausible bad faith claims under the *Iqbal* and *Twombly* standard.

7  Also the allegation that Defendants' failed "to return a signed and executed copy of the

8  September 2010 loan modification agreement" to Plaintiff or her attorney does not establish

9  a plausible bad faith claim because (1) according to the express terms of the LMA, Ocwen

10  reserved the right not deliver a signed copy to Plaintiff, *i.e.*, "the Note and Mortgage will not

11  be modified unless and until (i) [Plaintiff] receive[d] from the Servicer a copy of this

12  Agreement signed by the Servicer . . . [and] if you fail to send any payment on or before the

13  respective due date, the Servicer's modification offer will be null and void and this

14  Agreement will not become effective[,]" doc. 53-1 at 4; and (2) even though Plaintiff

15  acknowledges she possessed a copy to the August 2010 LMA, albeit unsigned by either

16  Ocwen or the Bank, Ocwen's September 2, 2011 letter confirmed Plaintiff's "loan was

17  approved for a modification on August 26, 2010 and the modification on the loan was

18  completed on December 6, 2010," Count Three fails to allege why Defendants are liable for

19  bad faith or how Plaintiff was damaged without Plaintiff possessing a fully-signed copy of

20  the LMA.

21      Finally, Count Three alleges Defendants are liable to Plaintiff for bad faith due to

22  Defendants' "[f]ailure to provide notice concerning the amount of payments in this matter[,]"

23  which is presumably a reference to the monthly escrow payment of $179.57. (Doc. 53, ¶ 69

24  at 13) Count Three does not allege that Plaintiff's promissory note was not escrowed for

25  monthly tax and insurance payments, that Plaintiff did not owe $179.57 per month for taxes

26  and insurance prior to the August 2010 LMA, that Plaintiff did not know the monthly escrow

27  payment was $179.57 until after the trustee sale, or that Plaintiff tendered the past-due

28  escrow amount to cure the impound account arrearage and Ocwen wrongfully refused to

accept it. Contrary to the AVC's allegations, the documents attached by Plaintiff to her amended complaint, the August 2010 LMA and Ocwen's September 2, 2011 letter, confirm Plaintiff was required to make monthly escrow payments, *in addition to* the principal and interest payments of $742.84 after the initial payment of $992.41 because Plaintiff's loan was escrowed at the time of the LMA. (*Id.*) (citing Exh.1, ¶ 12; doc. 53-1 at 8)  Plaintiff was obligated to make monthly payments to Ocwen for "Escrow Items," defined in the LMA as the residence's property taxes and insurance.

The Court agrees Plaintiff's bad faith claim fails to state a bad faith claim because Plaintiff has not alleged sufficient facts to plausibly show that Ocwen prevented Plaintiff from obtaining the benefits of the August 2010 LMA.

### D. Material Misrepresentation (Count Four)

Count Four is titled "Material Misrepresentation" and alleges some of the same allegations made in the bad faith count, *e.g.*, Defendants "never executed or returned a copy of an executed loan modification agreement[,]" (Doc. 53, ¶¶ 91 at 16) Regarding any misrepresentations, however, Count Four only alleges Defendants "caused their automated voice system to *misrepresent* the monthly amount owed by the Plaintiff under the loan modification agreement." (*Id.*, ¶ 93) (emphasis added).  No other misrepresentation in alleged in Count Four. Defendants contend Plaintiff's material misrepresentation claim is one for intentional misrepresentation or fraud and does not state a plausible claim because the AVC does not meet the heightened pleading standard required by Rule 9(b) and has alleged insufficient facts to satisfy the requisite fraud elements. (Doc. 51, at 10-11)

"[A] claim for intentional misrepresentation is a claim of fraud under Arizona law." *Frame v. Cal-Western Reconveyance Corp.*, 2011 WL 3876012 (D. Ariz. Sept. 2, 2011) (citing *Knoell v. Cerkvenik–Anderson Travel, Inc.*, 181 Ariz. 394, 891 P.2d 861, 869 (Az. Ct. App. 1994), *vacated and remanded on other grounds*, 917 P.3d 689 (Ariz. 1996)); *see also Frazer v. Millennium Bank, N.A.*, 2010 WL 4579799, at *3 (D. Ariz. Oct. 29, 2010) (citing *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 229 P.3d 1031, 1033-1034 (Az. Ct. App. 2010) (listing the nine elements necessary to establish intentional misrepresentation or fraud claim

under Arizona law). Federal Rule of Civil Procedure 9(b) governs the pleading standard for fraud in federal courts regardless whether the claim is based on federal or state law. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed.R.Civ.P. Rule 9(b)'s heightened pleading standard requires allegations of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed*, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994). As to fraud claims against multiple defendants,

> [R]ule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Henkels v. J.P. Morgan Chase*, 2011 WL 2357874 (D. Ariz. June 14, 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)) (quotations and citations omitted). A complaint of fraud must specify "the who, what, when, where, and how" of the alleged misconduct and the injury caused by a plaintiff's reliance on the misrepresentation. *Vess*, 317 F.3d at 1106; *Gerber v. Wells Fargo Bank, N.A.*, 2011 WL 5007921, at *6 (D. Ariz. Oct. 20, 2011).

Count Four does not allege "the who, . . . when, where, and how" of the alleged automated voice misrepresentation and the specific injury caused to Plaintiff by her reliance on the misrepresentation. *Vess*, 317 F.3d at 1106. While it alleges Defendants' automated voice system "[m]isrepresented the monthly amount owed by the Plaintiff under the loan

modification agreement[,]" Count Four does not allege the identity of the person or the defendant whose employee made the alleged misrepresentation (the "who"); when the misrepresentation occurred (the "when"); how the misrepresentation was false (the "how"); and the specific injury caused by Plaintiff's reliance on the alleged misrepresentation.

A claim for fraudulent misrepresentation must demonstrate the speaker's knowledge of the statement's falsity. *Dawson v. Withycombe*, 216 Ariz. 84, 97, 163 P.3d 1034, 1047 (Az. Ct. App. 2007) ("To maintain a claim for fraudulent misrepresentation, the claimant must demonstrate the speaker's knowledge of the falsity of the statement.") (citation omitted). There is no such allegation in the Count Four. Certainly, the vague allegation that "Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial," doc. 53, ¶ 96 at 16, does not meet Rule 9(b)'s heightened pleading standard regarding the specific injury caused to Plaintiff by her reliance on this misrepresentation. If Plaintiff intended Count Four to include other misrepresentations made by employees of the Bank or Ocwen, the other allegations in Count Four are not identified as "misrepresentations" and, most clearly, do not meet Rule 9(b)'s heightened pleading standard or provide Defendants with fair notice of "[t]he fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee*, 236 F.3d at 1019; *see also Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055, 1074-75 (D. Ariz. 2011) (dismissing fraud claim for failure to meet Rule 9(b)'s heightened pleading standard in action against bank after trustee sale and trustee deed was issued and recorded on plaintiff's former residence). Even construing the AVC in the light most favorable to Plaintiff, it is not possible to ascertain with sufficient particularity the specific misconduct that the Bank, or Ocwen, or both, committed.  Count Four fails to state a plausible claim for intentional misrepresentation against either Defendant.

**E. Negligence and Gross Negligence (Count Five)**

Count Five, entitled "Negligence/Gross Negligence," alleges Defendants had a duty to Plaintiff to provide her with accurate information concerning her monthly payments under the LMA, which were "imposed contractually upon the Defendants under the [LMA],

1   pursuant to the Note and/or Deed of Trust," Defendants violated their duty to the Plaintiff by

2   failing to provide her with accurate information concerning the monthly amount she would

3   owe under the LMA, and failing to provide that amount in the monthly statements sent by

4   the Defendants to the Plaintiff. (Doc. 53, ¶¶ 100-102 at 17) Her gross negligence cause of

5   action claims "Defendants knew the monthly amount that would be due under the written

6   loan modification agreement and in the monthly account statements, but they failed to

7   provide that amount to the Plaintiff." (*Id*., ¶ 104) Count Five alleges that "[a]s a result of

8   Defendants actions, Plaintiff has suffered and continues to suffer damages in an amount to

9   be determined at trial." (*Id*., ¶ 105)

10   Defendants argue Plaintiff's negligence claims fail because she has not sufficiently

11   alleged that Defendants' alleged actions proximately caused her damages." (Doc. 51 at 11)

12   "Specifically, Plaintiff has failed to plead that any alleged failure of Defendants, to clarify

13   the escrow payment portion of her payments, caused the foreclosure." (*Id*.)

14   "To establish a claim for negligence, a plaintiff must prove four elements: '(1) a duty

15   requiring the defendant to conform to a certain standard of care; (2) a breach by the

16   defendant of that standard; (3) a causal connection between the defendant's conduct and the

17   resulting injury; and (4) actual damages.'" *Narramore v. HSBC Bank USA, N.A.*, 2010 WL

18   2732815, at *8 (D. Ariz. July 7, 2010) (quoting *Gipson v. Kasey*, 214 Ariz. 141, 143, 150

19   P.3d 228, 230 (Ariz. 2007) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204

20   (Ariz. 1983)). "Generally, the element of duty is one for the court to decide, whereas the

21   others are factual issues usually decided by the jury." *Id*.

22   "In order to determine whether a duty of care existed, the court decides 'whether the

23   relationship of the parties was such that the defendant was under an obligation to use some

24   care to avoid or prevent injury to the plaintiff.'" *Id*. (quoting *Markowitz v. Arizona Parks Bd.*,

25   146 Ariz. 352, 356, 706 P.2d 364, 368 (Ariz. 1985)). "No duty exists unless the relationship

26   imposes a legal obligation for the benefit of one party on the other." *Id*. (citing *Ontiveros*,

27   136 Ariz. at 508, 667 P.2d at 208).

28   Arizona law on the scope of a lender's duty to care to a borrower is not well-settled.

1    In the absence of Arizona Supreme Court precedent, "federal courts exercising diversity

2    jurisdiction may look to other state court decisions, well-reasoned decisions from other

3    jurisdictions, and any other available authority to determine how the state court would

4    resolve the issue." *Santana v. Zilog, Inc*., 95 F.3d 780, 783 (9th Cir. 1996) (quoting *Burns*

5    *v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991)).

6            Based on different fact scenarios, judges in the District Court of Arizona disagree

7    whether lenders and loan servicers have a non-contractual duty towards borrowers which

8    may give rise to a negligence claim. *See e.g.*, *McIntosh v. IndyMac Bank, FSB*, 2012 WL

9    176316, at *3-4 (D. Ariz. Jan. 23, 2012); *Escobar v. Wells Fargo Bank, N.A.*, 2011 WL

10   6794032, at *3 (D. Ariz. Nov. 9, 2011) ("[A]t least in some traditional lender-borrower

11   relationships, a duty to disclose exists which could create a material question of fact to

12   survive pleadings."); *Silving*, 2011 WL 2669246, at *14 (rejecting defendants' claim that

13   "mortgage lenders do not generally have legal duties to borrowers from which negligence

14   claims may arise"); *Narramore v. HSBC Bank USA*, 2010 WL 2732815, at *8 (D. Ariz. July

15   7, 2010) (holding that a loan servicer has a duty of care "which [can] create a material

16   question of fact to survive pleadings"); *but see Wilson v. GMAC Mortg., LLC*, 2011 WL

17   4101668, at *3-4 (D. Ariz. Sept. 14, 2011) (finding plaintiff's negligence claims barred under

18   Arizona law as "negligently failing to honor a contract is still breach of contract. . . [and]

19   because plaintiff d[id] not allege physical injury to person or property as the result of

20   defendants' failure to provide a loan modification in accordance with the settlement

21   agreement, the economic loss doctrine bars this portion of plaintiff's claim.") (citing *Flagstaff*

22   *Affordable Hous. Ltd. P'ship v. Design Alliance, Inc*., 223 Ariz. 320, 323, 223 P.3d 664, 667

23   (Ariz. 2010)). In *Wilson*, the district judge explained that Arizona's "[e]conomic loss

24   doctrine, when applicable, acts to limit a party to contractual remedies for economic losses

25   absent physical injury to people or other property." *Id.* at *2.

26           In *Narramore*, the plaintiff asserted the defendants had a duty to notify plaintiff if a

27   continuation of trustee sale was not going to take place. Though the district judge denied the

28   bank and servicer's Rule 12(b) (6) motion to dismiss plaintiff's negligence claim, he wrote

the bank and servicer's duty of care "is very narrow" and "limited only to the duty to disclose," citing an Arizona Court of Appeals case holding that lenders owe a duty to disclose to borrowers the correct amount of monthly payments due under their loan agreement. *Narramore*, 2010 WL 2732815, at *8 (citing *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900 (Az. Ct. App. 1990)). Like the facts in *Wells Fargo*, the court in *Narramore* concluded that the defendants had a duty to notify plaintiff if a continuation of trustee sale was not going to take place. No such claim has been alleged in the case *sub judice*.

In *Wilson*, the district court noted that "[u]nless a 'special relationship' arises from extensive involvement in a lender's business, a lender of money owes no duty of care to a borrower when the lender's participation in the loan is limited to a 'mere lender of money' . . . Some traditional borrower-lender relationships may include a duty to disclose. This duty, however, is "very narrow" and is limited 'only to the duty to disclose.'" *Id.* (citing *Narramore*, 2010 WL 2732815, at *8).

The Court concludes that the undisputed facts established by the exhibits attached to Plaintiff's amended complaint, which contradict the amended complaint's allegations, do not establish Defendants had a duty of care to Plaintiff to support negligence claims against Defendants. It is undisputed that Defendants did not provide inaccurate information to Plaintiff regarding her monthly payments under the LMA. Ocwen's September 2, 2011 letter to Plaintiff confirmed the payments Plaintiff remitted pursuant to the LMA must be in the "entire payment amount (principal and interest portion and also the escrow portion) . . . you were required to remit monthly mortgage payment in the amount of $922.41 after the modification. However, you remitted only $742.84, which resulted in the delinquent status of the loan[.]" (Doc. 53-2, Exh. 2 at 1). "If the loan is delinquent, we do not accept partial payments[.]" *Id.* Plaintiff did not allege her loan was not escrowed for taxes and insurance or that she did not owe $179.57 per month for taxes and insurance. Plaintiff did not allege she tendered the full amount to cure the escrow arrearage, but Defendants refused, or Defendants waived the escrow payments in writing. Moreover, it is undisputed the August

1   2010 LMA's terms conclusively establish that "[i]f [Plaintiff's] loan is currently escrowed
2   for either taxes or insurance or both taxes and insurance, then Servicer will continue to
3   collect the applicable escrow amount in addition to your monthly principal and interest
4   payment. You agree to pay Servicer on the day payments are due under the Note and
5   Mortgage as amended by this Agreement. . . ." (Doc. 53-1, Exh.1 at 8)  Plaintiff has not
6   alleged sufficient facts to survive a Rule 12(b)(6) dismissal motion on her negligence claims.
7   Accordingly, Defendants' Motion to Dismiss the claim of negligence is granted.

8   **F. Fair Credit Reporting Act and Slander of Credit (Count Six)**

9   Count Six of Plaintiff's amended complaint alleges violations of the federal Fair
10  Credit Reporting Act ("FCRA") and a cause of action for slander of credit pursuant to
11  Arizona law. (Doc. 53 at 17-18)  Plaintiff's FCRA claim is based upon Defendants' "[f]iling
12  false and misleading information [regarding Plaintiff] to credit reporting agencies and/or
13  credit reporting bureaus. . . [and] fail[ing] to accurately maintain [Plaintiff's] information,
14  intentionally releas[ing] this information to credit reporting agencies [knowing] this
15  information they were providing was inaccurate." (*Id.*, ¶¶ 108, 110)  Plaintiff's slander-of-
16  credit claim is apparently based upon the same acts and failures of Defendants which
17  allegedly violate the FCRA.  (*Id.*, ¶¶ 111, 113)

18  Defendants contend Plaintiff's FCRA allegations do not state a plausible claim
19  "because Plaintiff fails to specify which provision of the FCRA was allegedly violated. . .
20  [as] Defendants are unable to defend against the allegations without specificity as to what
21  section of the FCRA was allegedly violated." (Doc. 51 at 12)

22  In 1970, Congress enacted the FCRA, 15 U.S.C. §§ 1681-1681x, "to ensure fair and
23  accurate credit reporting, promote efficiency in the banking system, and protect consumer
24  privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)
25  (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)) (footnote omitted). In
26  addition to establishing responsibilities on consumer reporting agencies ("CRAs"), "[t]he
27  FCRA imposes some duties on the sources that provide credit information to CRAs, called
28  'furnishers' in the statute[,]" which include lenders. *Id.*  (footnote omitted). "Section 1681s-2

1  sets forth '[r]esponsibilities of furnishers of information to consumer reporting agencies,'
2  delineating two categories of responsibilities." *Id.* at 1154 (footnote omitted). "Subsection
3  (a) details the duty 'to provide accurate information,' and includes the [duty to provide notice
4  of dispute]." *Id.* "Section 1681s-2(b) imposes a second category of duties on furnishers of
5  information [which] are triggered "upon notice of dispute" - that is, when a person who
6  furnished information to a CRA receives notice from the CRA that the consumer disputes the
7  information." *Id.* (citing § 1681i(a)(2) (requiring CRAs promptly to provide such notification
8  containing all relevant information about the consumer's dispute).

9         Under the FCRA, furnishers of credit information are not liable to a consumer for the
10  information they initially furnish to CRAs regarding the consumer, regardless of its truth or
11  accuracy. *Blau v. America's Servicing Co.*, 2009 WL 3174823, at *11 (D. Ariz. Sept. 29,
12  2009) (citing, *inter alia*, 15 U.S.C. § 1681s-2(c) and (d); *Nelson v. Chase Manhattan*
13  *Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002); *Washington v. CSC Credit Services, Inc.*,
14  199 F.3d 263 (5th Cir. 2000)). "Rather, furnishers can only be liable to consumers for
15  violating the 'reinvestigation' procedures set forth in 15 U.S.C. § 1681s-2(b)." *Id.* "A
16  furnisher's obligation to conduct a reinvestigation is only triggered if the consumer submits
17  a notice of dispute to the credit reporting agency as contemplated by 15 U.S.C. § 1681i." *Id.*
18  (citing *Young v. Equifax*, 294 F.3d 631 (5th Cir. 2002)).

19        Plaintiff has not provided any authority that Arizona recognizes a cause of action
20  entitled "slander of credit." Assuming such a cause of action exists in Arizona and it is
21  subsumed in a defamation claim, the elements are: (1) the "defendant made a false
22  defamatory statement about plaintiff, (2) defendant published the statement to a third party,
23  and (3) defendant knew the statement was false, acted in reckless disregard of whether the
24  statement was true or false, or negligently failed to ascertain the truth or falsity of the
25  statement." *Farrell v. Hitchin' Post Trailer Ranch*, 2011 WL 6057930, at *2 (Az. Ct. App.
26  Dec. 6, 2011) (citation omitted). Count Six does not identify the statement Defendants
27  allegedly made, the persons or entities to whom the statement was made, why the statement
28  was false, the evidence to support Defendants' knowledge  the statement(s) was false, or the

damage that directly resulted to Plaintiff's credit from Defendants' false statement. While detailed factual allegations are not necessary, Count Six must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555-56.

Count Six's allegations are too vague to raise the right to relief above the speculative level. *See Twombly*, *Iqbal*, and *Oraha*, 2012 WL 70834, at *5. Count Six alleges only conclusions, failing to describe with particularity the "false and misleading information" or other information Defendants purportedly provided CRAs about Plaintiff that Defendants knew was inaccurate. There is no allegation regarding malice, much less sufficient factual detail to raise a plausible claim of maliciousness. Like the FCRA pleading deficiencies in *Blau*, there is no factual allegation that Plaintiff ever submitted a Section 1681i notice to any CRA. Thus, Defendants' FCRA duties were never triggered as a matter of law. *See Blau*, 2009 WL 3174823, at *11; 15 U.S.C. § 1681s-2(b)(1) ("After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . ."); *Charov v. Bank of America*, 2010 WL 2629419, at *2 (D. Ariz. June 30, 2010) (lender's Rule 12(b)(6) motion granted on FCRA claim because "plaintiff d[id] not allege that [lender] received a notice of dispute from a credit reporting agency, which is necessary to plead a private cause of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681."). Based on the foregoing, Count Six fails to state a plausible FCRA or slander-of-credit claim under Rule 8(a)(2), Fed.R.Civ.P.

### G. Breach of Contract (Count Seven)

The AVC's last count is a claim for breach of contract. Count Seven alleges Plaintiff entered into written contracts with "the Defendant" for loan modifications on her mortgage in November 2009 and September 2010 and thereafter Defendants failed to 1) execute the November 2009 document in accordance with its terms; 2) remit an executed copy of the September 2010 written contract despite being required to under the terms of the contract; and 3) accept payments under the terms of the September 2010 written contract. (Doc. 53 at 19)  Defendants thereby "materially breached the written contract by failing to provide

1   monthly written statements accurately advising the Plaintiff of the amounts due under the

2   loan modification agreement[,]" resulting in Plaintiff's damages. (*Id.*)

3        Defendants argue Plaintiff's breach-of-contract claim fails to state a claim because

4   "Defendants rejected her payment because her loan was declared in default for failing to pay

5   the escrowed portion of her loan." (Doc. 51 at 14)

6        "In order to state a claim for breach of contract, a plaintiff must allege the existence

7   of a contract between the plaintiff and defendant, a breach of the contract by the defendant,

8   and resulting damage to the plaintiff." *Warren v. Sierra Pacific Mortg. Srvcs Inc.*, 2011 WL

9   1526957, at *3 (D. Ariz. April 22, 2011) (citing *Chartone, Inc. v. Bernini*, 207 Ariz. 162,

10  170, 83 P.3d 1103, 1111 (Az. Ct. App. 2004)); *see also Commercial Cornice & Millwork,*

11  *Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 38, 739 P.2d 1351, 1355 (Az. Ct. App.

12  1987) ("To state a claim in contract the complaint must allege an agreement, the right to seek

13  relief, and breach by the defendant.").

14       There is authority that Plaintiff's count for breach of contract has been waived

15  pursuant to A.R.S. § 33–811(C) by Plaintiff's failure to enjoin the trustee sale. *Schrock v.*

16  *Federal Nat. Mortg. Ass'n*, 2011 WL 3348227, at *6 (D. Ariz. Aug. 3, 2011); *Spielman v.*

17  *Katz*, 2010 WL 4038838, at *3 (D. Ariz. Oct. 14, 2010). "In effect, section 33-811 requires

18  Plaintiff[] to assert any objections to and obtain injunctive relief from the trustee's sale prior

19  to such sale or risk losing their rights to object." *Id.* Even if the breach-of-contract claim has

20  not been waived, Plaintiff has failed to state a plausible claim for breach of contract.

21       Based on the two exhibits attached to the AVC as discussed throughout this Order,

22  it can not reasonably be disputed that the August 2010 LMA required the amount ($179.57)

23  for Plaintiff's monthly escrow payments be paid to Ocwen in addition to Plaintiff's monthly

24  principal and interest payment of $742.84. Plaintiff "[a]gree[d] to pay Servicer on the day

25  payments are due under the Note and Mortgage as amended by this Agreement, . . . (a) taxes

26  and assessments and other items which can attain priority over the Mortgage as a lien or

27  encumbrance on the Property; . . . [and] (c) premiums for any and all insurance required by

28  Servicer under the Note and Mortgage. . . called 'Escrow Items' . . . ." (Doc. 53-1, Exh.1 at

8) Plaintiff's full monthly payment ($922.41) was re-affirmed in Ocwen's September 2, 2011 letter to Plaintiff in sufficient time for Plaintiff to cure the default and avoid the trustee sale. (Doc. 53-2, Exh.2 at 4-15) ("[i]t is required that the entire payment amount (principal and interest portion and also the escrow portion) be remitted to us. . . .")  Plaintiff breached the August 2010 LMA by failing to pay the monthly escrowed portion of her payment as required and elected to litigate the issue rather than pay the deficiency prior to the trustee sale. With respect to Plaintiff's allegations that Defendants breached the first or November 2009 LMA, the allegations are too vague to raise the right to relief above the speculative level. *See Twombly* and *Iqbal*. Plaintiff's breach-of-contract claims fail as a matter of law.

**VI. Conclusion**

The Court finds that Plaintiff's Amended Verified Complaint fails to state a claim upon which relief may be granted. Having provided Plaintiff, through her counsel, with an opportunity to amend the defects in her initial complaint, Plaintiff's action is dismissed with prejudice without leave to amend.

Accordingly,

**IT IS ORDERED** that Defendants HSBC and Ocwen's Motion to Dismiss, doc. 51, is **GRANTED**. This action is dismissed with prejudice for failure to state plausible claims upon which relief may be granted. The Clerk of Court is kindly directed to terminate this action.

**IT IS FURTHER ORDERED** that Defendants HSBC and Ocwen's Request for Judicial Notice, doc. 52, is **GRANTED**.

**IT IS FURTHER ORDERED** that, because the briefing is adequate and oral argument would not aid the Court, Defendants' request for oral argument is **DENIED**.

**IT IS FURTHER ORDERED** that pages 18 through 22 of Plaintiff's Response to Defendants' Motion to Dismiss, doc. 65, are **STRICKEN** from consideration due to

1    Plaintiff's violation of LRCiv 7.2(e)(1).

2        DATED this 26th day of December, 2012.

3

4

5                                                    Lawrence O. Anderson
                                                United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28